## NATHANIEL DICKEY, Administrator, etc., Respondent, v. WALTER S. DICKEY, Appellant.

### Kansas City Court of Appeals, April 3, 1905.

1. **MASTER AND SERVANT: Fellow-Servant: Evidence.** Evidence shows the servant's injury resulted from the negligence, if any, of a fellow-servant for which defendant is not liable.

2. ————: **Different Departments.** The classification of servants into different departments no longer obtains in this State so as to modify the doctrine of fellow-servants.

3. ————: **Careless Servant: Master's Act.** The master's liability is based upon the rule that what one does through another he does himself, and where the negligent act is not within the scope of the servant's duties the master is not liable for the resulting injuries.

4. ————: **Contributory Negligence: Jury.** The evidence offered by an injured servant is reviewed and held to show him guilty of contributory negligence precluding the necessity of sending that question to the jury.

5. ————: **Signals: Evidence: Repairer.** On the evidence it is held that the master is not required to furnish signals of the starting of the machinery for the protection of a repairer of such machinery.

Appeal from Cass Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

REVERSED.

*Frank P. Sebree, John D. Wendorff* and *Pratt, Dana & Black* for appellant.

(1) When an accident, although possible, yet not probable, according to ordinary and usual experience, occurs and causes an injury, defendant is not guilty of negligence, because he does not take precautionary measures to prevent the injury, which, if taken, would have prevented it, if the injury could not reasonably have been anticipated. Since there was not a scintilla of evidence that defendant was negligent in any manner whatever, plaintiff was not entitled to recover and defendant's instruction numbered 1 should have been given. Breen v. Cooperage Co., 50 Mo. App. 202, 211, 212, 214; Fuchs v. St. Louis, 167 Mo. 620, 645, 652; Brewing Ass'n v. Talbot, 141 Mo. 674, 683-5; Sullivan v. Railway, 133 Mo. 1; Hysell v. Swift & Co., 78 Mo. App. 39, 47-8, 51; Epperson v. Telegraph Co., 155 Mo. 346, 382-3; O'Malley v. Railway, 113 Mo. 319; Guffey v. Railway, 53 Mo. App. 462, 469. (2) Hempell was neither negligent nor in charge of the clay press at the time of the accident. (3) Hempell was not in charge of the press, nor had he any control over the governing machinery that worked the piston. He was the temporary leverman and his employment only related to and all he was authorized to do was to operate the leverman's lever for a few moments while Williams, the leverman, measured a ring. Any act of his in omitting to communicate information given him by plaintiff to the pressman, if he did fail to do so, was beyond the scope of his employment and the defendant is not liable

therefor.   Hamlet v. Railroad, 89 Mo. App. 354; Bequette v. Railway, 86 Mo. App. 601; Wood on Master and Servant (2 Ed.), 525, 527; Farber v. Railway, 116 Mo. 81; Stringer v. Railway, 96 Mo. 299; Cousins v. Railway, 66 Mo. 572; Voegeli v. Marble & Granite Co., 49 Mo. App. 643; Wood on Master and Servant (2 Ed.), 309; Farber v. Railway, 32 Mo. App. 378; Jones v. St. Louis, etc., Co., 43 Mo. App. 398; Snyder v. Railway, 60 Mo. 413, 419; Sherman v. Railway, 72 Mo. 62; Watson v. Coal Co., 52 Mo. App. 366.    (4)    Plaintiff was guilty in the manner in which he addressed Hempell, and in choosing the more dangerous of two methods in measuring the shaft.    When plaintiff's own evidence shows that he was guilty of contributory negligence, the trial court should take the case from the jury.    Moore v. Railway, 146 Mo. 572, 579, 580; Hurst v. Railway, 163 Mo. 309, 321; Weber v. Cable Co., 100 Mo. 194, 201; Yancey v. Railroad, 93 Mo. 433; Buesching v. Gas Light Co., 73 Mo. 219, 229; 1 Bailey on Master and Servant, secs. 1121, 1123; 1 LaBatt on Master and Servant, sec. 333. (5)    This court rightfully decided in this case that plaintiff and Hempell were fellow servants, and whether Hempell failed to notify DeLong or not of plaintiff's conversation with him, the defendant is not liable.    Grattis v. Railroad, 153 Mo. 380; McCarty v. Hotel Co., 140 Mo. 307; Parker v. Railroad, 109 Mo. 362; Higgins v. Railroad, 104 Mo. 413; Murray v. Railway, 98 Mo. 573; Sherrin v. Railroad, 103 Mo. 378; Rohback v. Railroad, 43 Mo. 187; McGowan v. Railroad, 61 Mo. 528; McDermott v. Railroad, 30 Mo. 115; Traka v. Railway, 100 Ia. 205. (7)    A master can conduct his business in his own way, and the servant, knowing the hazards of his employment as the business is conducted, impliedly waives the right to compensation for injuries resulting from causes incident thereto, though a different method of conducting the business would have been less dangerous.    Beckman v. Brew. Assn., 98 Mo. App. 555, 560; Cothron v. Pack-

ing Co., 98 Mo. App. 343, 349; Bair v. Heibel, 103 Mo. App. 621, 632; Harrington v. Railroad, 104 Mo. App. 663, 670-1; Holmes v. Brandenbaugh, 172 Mo. 53, 65; La-Batt on Master and Servant, pp. 85 and 86; Bradley v. Railroad, 138 Mo. 293; Jackson v. Railroad, 104 Mo. 448; Berning v. Medort, 56 Mo. App. 443; Junior v. Electric Company, 127 Mo. 79; Lucey v. Oil Company, 129 Mo. 32; Nugent v. Milling Company, 131 Mo. 241; Holloran v. Iron Company, 133 Mo. 470.

*F. F. Rozzelle, Frank P. Walsh, R. T. Railey, John G. Park* for respondent.

(1) It was a question for the jury whether or not Hempell was in charge of the clay presses when plaintiff spoke to him. Hempell was ordered by the foreman to act as leverman and had not been relieved. It, therefore, was his duty to stay at the press during the absence of DeLong and Williams, and guard it from injury and prevent its injuring others. This was plainly within his express or implied authority. Porter v. Woods, 138 Mo. 551, 552; Knowles v. Bullene, 71 Mo. App. 341; Ephland v. Railway, 137 Mo. 187, 196; Canfield v. Railroad, 59 Mo. App. 354, 362; Garretzen v. Duenckel, 50 Mo. 104; Schmidt v. Adams, 18 Mo. App. 432; Douglass v. Stephens, 18 Mo. 362, 367; 1 Sherman & Redfield on Neg., sec. 148, quoted in 137 Mo. 1. c. 196. (2) Defendant's foreman, Williams, had left Hempell apparently in charge of the machine, and for his defaults in connection therewith, defendant must answer. Clack v. Supply Co., 72 Mo. App. 506; May v. Trust Co., 138 Mo. 275, 282; Cross v. Railway, 71 Mo. App. 585, 590, 141 Mo. 132. The instructions "taken together," as they must be, were therefore complete and unexceptionable. Nickel v. Paper Co., 68 S. W. 956, 95 Mo. App. 226; Swofford v. Spratt, 67 S. W. 702, 703, 93 Mo. App. 631; Anderson v. Railroad, 81 Mo. App. 116, 124; Anderson v. Railroad,

161 Mo. 411, 427. The absence of suitable rules and system of work, requiring the suspension of the operation of the press while being measured, and the failure to provide a code of signals, has been found by the jury to be negligence. The master's failure to prescribe such rules or system of work is his personal negligence, for which he is liable. Schroeder v. Railroad, 108 Mo. 322, 329; Reagan v. Railroad, 93 Mo. 348, 352, citing Shearman & Redf. on Neg., sec. 93. (3) The servant does not assume the risk of injury from his master's personal negligence. Pauck v. Beef Co., 159 Mo. 467, 477; Settle v. Railroad, 127 Mo. 336; Railway v. O'Brien, 161 U. S. 451, 40 L. Ed. 766; Hough v. Railway, 100 U. S. 213, 25 L. Ed. 612; Pauck v. Beef Co., 159 Mo. 467, 166 Mo. 639; Wendler v. Furnishing Co., 165 Mo. 527; Poindexter v. Paper Co., 84 Mo. App. 352, 357; Schroeder v. Railway, 108 Mo. 1. c. 328, 331; Foster v. Railway, 115 Mo. 1. c. 179; Rutledge v. Railroad, 110 Mo. 312; s. c., 123 Mo. 1. c. 132, 138; Francis v. Railroad, 110 Mo. 1. c. 394, 395; Abell v. Railroad, 128 N. Y. 662; Whittaker v. Railroad, 126 N. Y. 544. (4) Plaintiff and Hempell were not fellow-servants. Persons employed in different departments are not fellow-servants. Musick v. Packing Co., 58 Mo. App. 322, 334; Sullivan v. Railroad, 97 Mo. 113; Parker v. Railroad, 109 Mo. 362; Dixon v. Railroad, 109 Mo. 413; Condon v. Railroad, 78 Mo. 567; Hall v. Railroad, 74 Mo. 298; Relyea v. Railroad, 112 Mo. 86, 93. Persons operating machinery and persons repairing it are not fellow-servants. The master is liable to members of either class for injuries caused by the negligence of members of the other class. Oglesby v. Railway, 150 Mo. 137; Musick v. Packing Co., 58 Mo. App. 1. c. 334; Condon v. Railway, 78 Mo. 1. c. 573; Long v. Railway, 65 Mo. 225; Leubke v. Railway, 59 Wis. 127, 131; Ford v. Railroad, 110 Mass. 240; Railroad v. Herbert, 116 U. S. 653; Hough v. Railway, 100 U. S. 213; Railway v. Hoyte, 122

Ill. 369, 374; Steel Co. v. Shields, 146 Ill. 603, 610. Plaintiff and Hempell not having been brought into such habitual association that plaintiff might observe Hempell's conduct, they were not fellow-servants. Relyea v. Railroad, 112 Mo. 86, 93; Glover v. Bolt Co., 153 Mo. l. c. 342; Dixon v. Railroad, 109 Mo. l. c. 424. (5) Defendant is liable if Hempell was incompetent and defendant with knowledge, or the means of knowledge thereof, retained him in his service. It is immaterial whether Hempell was plaintiff's fellow-servant or not. Neilon v. Railway, 85 Mo. 599; Maxwell v. Railway, 85 Mo. 95; Williams v. Railroad, 109 Mo. 475; Grube v. Railway, 98 Mo. 330; Hughes v. Fagin, 46 Mo. App. 37; Hilts v. Railway, 55 Mich. 437; Stone Co. v. Whalen, 151 Ill. 472; Testimony of Sorrell, R. 48, 49, 54, 56; Testimony of Chas. Williams, R. 57-59. (6) Defendant was negligent in failing to prescribe a suitable system of work, rules and signals. Schroeder v. Railway, 108 Mo. l. c. 328; Foster v. Railway, 115 Mo. l. c. 179; Rutledge v. Railroad, 110 Mo. 312, 319; s. c., 123 Mo. l. c. 132, 138; Browning v. Railroad, 124 Mo. l. c. 69, 70; Bluedorn v. Railroad, 108 Mo. 439, 448; Ellingson v. Railway, 60 Mo. App. 679, 686.

JOHNSON, J.—This suit was brought in the Jackson Circuit Court but was tried in Cass county where it was taken on change of venue. It is an action to recover damages for personal injuries alleged to have been sustained as the result of defendant's negligence. Plaintiff recovered judgment in the sum of forty-two hundred and fifty dollars.

At the time of the injury, September 13th, 1899, defendant was engaged in operating in the town of Deepwater a large factory—the output of which was tiling and sewer pipe. Our concern centers upon a certain machine located in the main factory building in use in the making of sewer pipe. This apparatus and its me-

thod of operation, so far as they bear upon the questions before us may be described as follows: The raw material to be treated was carried to the top of the building which was four stories high. When ready for moulding it was placed in a large hopper in a room on the fourth floor and from there fed downward as required into a cylinder where it was pressed into shape by means of a piston operated by powerful machinery. The cylinder, the top of which was level with the plane of the floor extended down a distance of several feet into the nether room. The bottom of the cylinder was a movable appliance called "a former" which, when the piston moved downward, was pressed upward to form an end of the pipe. From the bottom of the hopper through the center of the cylinder to the third story floor ran a stationary shaft. The piston's range of action was from a point about twenty inches above the top of the cylinder down into it. Just before the accident the piston was at its highest point, leaving exposed between it and the top of the cylinder a portion of the center shaft about twenty inches in length. Plaintiff, a machinist employed by defendant to make repairs upon the machinery used in the operation of the plant, on the preceding day had been ordered to measure the center shaft for the purpose of making certain needed repairs. For reasons not now material, he selected for this purpose the part thereof between the piston and the top of the cylinder. This necessitated going to the fourth floor and in the making of measurements the insertion of his hand within the sphere of the piston's action. Injury to that member was certain should the piston descend during the operation for it moved with great rapidity when in action. No claim is made of the existence of any defect in the place plaintiff chose for his work. The only risk he ran lay in the possibility of the machinery starting to operate when his hand was between the piston and cylinder. In the absence of such movement the place was absolute-

ly safe. The motion of the piston was controlled by an operator called a pressman whose station was upon the third floor. He started or stopped the machinery by means of a lever which controlled the application of the power. About five feet from this lever was another called the "leverman's lever" used in operating the die called the "former." Above the "leverman's lever" depending from the ceiling was another lever called the "cut-off lever" used to operate the knife which cut the pipe to the required length. The same operator worked the "leverman's" and "cut-off" levers. He was called the "leverman" and his station was some five feet from that of the "pressman." It must be kept in mind that the "leverman" had nothing to do with respect to regulating the action of the piston. This was under the sole control of the pressman who applied and shut off the power in obedience to signals given by workmen whose duty was to fill the cylinder from the hopper with material to be treated. The morning after receiving the order to measure the shaft plaintiff first went to the pressman to arrange for the stoppage of the work a sufficient time to enable him to accomplish his task in safety. It appears that the regular pressman was away on that day and his place was being filled by the "leverman" DeLong. The foreman of the room, Williams, had assumed the leverman's station. When plaintiff arrived the machinery was at rest. DeLong had left his post for the moment to perform another duty incident to his work. Williams had also left his post but was at work, temporarily, some fifteen or twenty feet away. Before leaving, Williams had placed at the leverman's station to perform the duties of that position a general utility man called a "roustabout" named Hempell, so that when plaintiff approached no one was at the pressman's post and Hempell, acting as leverman but with nothing to do at that moment, was standing in his proper place near the "leverman's" lever. Plaintiff addressed Hempell, saying: "Can I go upstairs and measure that shaft?"

Hempell replied: "Yes, the shaft is the same size below that it is above." Meaning that it could be measured in the room where they were. Plaintiff without further word to Hempell, or any one else, turned on his heel, went up stairs and proceeded with his work, using for that purpose calipers which he had brought with him. In the meantime, both DeLong and Williams returned to their respective posts, the latter relieving Hempell who left without reporting his conversation with plaintiff. DeLong, not knowing of plaintiff's position, started the machinery at the moment plaintiff's hand was between the piston and cylinder top. The hand was frightfully injured by the descending piston.

The negligence, if any, involved in the failure of Hempell to apprise the pressman of plaintiff's position was that of a fellow-servant, for which defendant is not liable.

The classification of servants into different departments no longer obtains in this State to modify the application of the fellow-servant rule.

But it is charged in the petition, and evidence was introduced in support thereof, that Hempell was an incompetent servant and defendant had knowledge of such fact. The liability of a master for the torts of his servant is based upon the rule that what one does through another he does himself. Obviously, this rule cannot be applied unless it is made to appear either as a fact or in law that the negligent act sprung from delegated authority, for if the master cannot be said to have authorized the act, either expressly or by implication, then in no sense can it be imputed to him. This is elementary. Applying this plain test to the question before us, we find no reason for considering the alleged fact of Hempell's habitual inattention to his duties. He was not directed nor authorized to operate the pressman's lever and was without power to start or stop the machinery. The performance of his assigned duties, however negligently conducted, placed neither plaintiff nor any one

else in jeopardy.   Upon what principle, then, should the master be held for an act clearly beyond the limits of delegated duty?   It is said plaintiff relied upon him because he was the only one there in charge of the machine and was apparently clothed with authority to discharge the duties of pressman.   But as to plaintiff, such assumption cannot be entertained.   He knew the duties of the respective positions as well as any one in the establishment; knew Hempell was a roustabout; saw him occupying the position of leverman; saw the pressman's post vacant; knew that without the presence of both pressman and leverman the machinery could not or would not be operated.   He was entirely unwarranted in assuming that Hempell was there in charge of the machine.   In relying upon Hempell to convey information of his situation to the pressman, plaintiff attempted by means of his own selection to insure his safety, and if the instrumentality employed failed him, it was the result of his own act, not that of the master.   These considerations logically lead to the conclusion that plaintiff himself was guilty of negligence.   His long experience as a practical machinist, his perfect familiarity with the method followed by defendant in the conduct of his business; his knowledge of the duties of the respective employees combined to give him exact information as to the proper precautions to be taken for his protection. The master's order left it open to him to select his own time and place for making the measurement.   Therefore, the duty was upon him, not the master, to attend to having the machinery stopped during the performance of his task.   Finding the workman who controlled the movement of the machine absent from his post, instead of making known his wants to the foreman, who was but a short distance from him, he spoke to a mere servant engaged in the performance of other duties.   And in the conversation following took no pains to make it clear that he intended at once to proceed to put himself in a place of danger if the machine started.   The evidence ut-

terly fails to show that Hempell knew plaintiff purposed putting his hands into the jaws of a trap; that it was necessary for the machine to remain at rest or even that he knew plaintiff had gone up stairs. All plaintiff said was: "Can I go upstairs and measure that shaft," and when Hempell replied, "yes. It is the same size below that it is above," plaintiff gave no intimation that notwithstanding this suggestion he would do his measuring up stairs; made no request that the machinery be held at rest; gave no information that this was necessary; made no remark of any kind—but turned away, went up stairs without even looking to see if Hempell was observing his movements, and deliberately stuck his hand into this most dangerous place. Considering the certainty of injury if the piston started to move, and his knowledge thereof, his conduct was most culpable and inconsistent with the exercise of any degree of care. It is true, contributory negligence ordinarily is a question for the jury; but when it appears from a plaintiff's own testimony that he has omitted to make any attempt, worthy of the name, to protect himself, and has blindly rushed into imminent peril, trusting to chance, courts should not hesitate to characterize his conduct.

Further, it is urged defendant should be held liable because he failed to provide signals at the place where plaintiff attempted to perform his work to warn workmen of approaching movement of the piston. No men employed in the operation of the plant worked near this place and if any had, no danger of injury would have been involved for it was necessary to thrust the hand into the machine in order to be hurt by it. Plaintiff's business was to repair the machinery in the plant not to work near to nor with it. To require the master to anticipate the numerous points at which the men engaged in making repairs would have to work and to guard all such places with signals for their sole protection would call for the exercise not of reasonable care alone but of

a degree of prudence and foresight impossible of accomplishment and one which it is unnecessary to state the law does not impose.

The judgment is reversed.   All concur.